# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

COPRECITEC, S.L., COPRECI, S. COOP., and MONDRAGON COMPONENTS U.S.A. CO.,

     Plaintiffs,

      v.

THE BRINKMANN CORPORATION,

     Defendant.

Civil Action No.
1:12-CV-1480-AT

## COPRECI'S RESPONSE TO BRINKMANN'S OBJECTIONS
## TO SPECIAL MASTER'S REPORT ON CLAIM CONSTRUCTION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     THE PATENTS-IN-SUIT ....................................................................3

        A.      Overview of Copreci's Invention............................................3

        B.      The Specification....................................................................6

        C.      The Claims .............................................................................9

        D.      The Prosecution History......................................................11

        E.      Brinkmann's Accused Products ...........................................12

III.    ARGUMENT......................................................................................13

        A.      Claim Construction Principles .............................................13

        B.      The Special Master Correctly Construed "First Part" and
                "Rotatable Structure" as Having Their Plain and Ordinary
                Meanings in the Context of the Claims in Which They Appear.........15

IV.     CONCLUSION.................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011) ........................................................... 2

*Al-Site Corp. v. VSI Int'l, Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) .........................................................17

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) .........................................................14

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002) .................................................. 17, 21

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) .........................................................19

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .................................................. 13, 15

*Hubbell, Inc. v. Pass & Seymour, Inc.*,
2011 WL 1045659 (D. Conn. 2011) ...................................................18

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
649 F.3d 1350 (Fed. Cir. 2011) .........................................................17

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988) ...........................................................23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .................................................... 15, 23

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
382 F.3d 1354 (Fed. Cir. 2004) ..................................... 16, 17, 21, 22

*Linear Tech. Corp. v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004) ..........................................................................18

*MA. Inst. Of Tech. v. Abacus Soft.*,
   462 F.3d 1344 (Fed. Cir. 2006) ........................................................................22

*Mas-Hamilton Group v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) ........................................................................22

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .............................................................. *passim*

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011) .............................................................. 17, 22

*Stryker Corp. v. Zimmer, Inc.*,
   2012 Markman 333814, 2012 WL 333814 (W.D. Mich. 2012) ......................17

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ........................................................................14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ........................................................................13

*Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*,
   239 F.3d 1225 (Fed. Cir. 2001) ........................................................................20

**FEDERAL STATUTES**

35 U.S.C. § 112 ................................................................................... *passim*

## I.     INTRODUCTION

Plaintiffs Coprecitec, S.L., Copreci S. Coop., and Mondragon Components U.S.A. Co. (collectively "Copreci") assert that Defendant The Brinkmann Corporation ("Brinkmann") has been infringing claims 1-3 and 5 of U.S. Patent No. 7,950,384 ("the '384 patent") and claims 1-5, 8-12, 14, and 16 of U.S. Patent No. 8,282,390 ("the '390 patent").  Under a proper construction of these claims, there is no reasonable dispute that Brinkmann infringes each of them.  Indeed, as Brinkmann correctly points out, Copreci specifically drafted these claims with the intent that they would cover Brinkmann's infringing products.

In this case, the parties initially had disputed the construction of four claim terms:  "first part," "second part," "rotatable structure," and the phrase "absent the presence of the first part or the second part the regulating organ is rotatable to the second angular position."  For each of these terms, Copreci proposed that the Court construe them to have their ordinary meaning because each of them can be easily understood by a jury without further explanation.  Brinkmann, on the other hand, proposed complicated and convoluted constructions that amounted to an improper attempt to limit the claims to the preferred embodiments (i.e., examples) described in the specification, contrary to applicable law governing claim construction.

This past summer, the parties submitted multiple, lengthy briefs explaining the basis for their proposed claim constructions, and on July 17, 2013, Special Master Rosenberg held an oral hearing lasting several hours to allow the parties to fully present and explain their arguments in detail.  Thereafter, on August 20, 2013, the Special Master issued a detailed opinion that provided his claim construction recommendations and explained the pertinent facts and legal authority that support his recommendations.  As explained in his opinion, "after due consideration of the applicable law as applied to the evidence and the arguments of the parties," the Special Master adopted Copreci's proposed constructions for each of the four terms in dispute.  Dkt. No. 58 at 3, 13, 15, 17.  On September 10, 2013, Brinkmann objected to the Special Master's construction of two of the four terms in dispute.[1]  Specifically, Brinkmann objected to the Special Master's constructions of the terms "first part" and "rotatable structure," which interpreted them to have their ordinary meaning, as read within the context of the claims in which they appear.  Dkt. No. 58 at 13, 15.

---

[1] Brinkmann waived its right to challenge the Special Master's constructions of the other two terms by failing to object.  *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1131 (Fed. Cir. 2011) ("[F]ailure to raise this particular objection, in the face of both Rule 53(f)(2) and a court order setting a specific deadline for the filing of objections, results in waiver of the argument on appeal.").

In an effort to manufacture a nonexistent noninfringement defense, however, Brinkmann requests that the Court disregard the recommendations of the Special Master and instead construe the terms "first part" and "rotatable structure" as means-plus-function limitations, even though the claims do not recite the statutory term "means" that is the hallmark of a means-plus-function claim. In so doing, Brinkmann seeks to interject numerous unclaimed limitations into the claims and thereby limit them to the examples provided in the specification. As the Special Master explained to Brinkmann's counsel at the hearing, however, this is simply an invitation to commit reversible error. Dkt. No. 56 at 77 ("I do think there's a 90 or a hundred percent chance [Brinkmann's construction] would be reversed."). For the reasons explained by the Special Master and herein, the Court should reject Brinkmann's objections and adopt the recommendations of the Special Master.

## II.     THE PATENTS-IN-SUIT

### A.     Overview of Copreci's Invention

Copreci's patents describe inventions related to gas grills that can be converted between liquefied petroleum (e.g., propane) and natural gas, so that a user can operate the grill with either fuel. Such "convertible grills" provide retailers with the opportunity to sell the same grill to its customers regardless of whether a particular customer prefers liquefied petroleum or natural gas. By

selling a grill that uses either fuel, the retailer avoids stocking separate models, thereby allowing the retailer to manage its inventory more efficiently. Accordingly, many retailers prefer convertible grills over single-fuel grills.

Before Copreci's invention, however, convertible grills were not practical for many consumers due to the complexity of switching between liquefied petroleum and natural gas.  When switching between these fuels, the fuel-valve configuration of a convertible grill must be changed to account for the fact that these fuels operate at different pressures and flow rates.  Specifically, to ensure that the proper amount of fuel is supplied to the grill's burner when using the "low" setting, the valve opening used for supplying the minimum flow rate of fuel for liquefied petroleum gas is different than the one used for natural gas.

In the prior art, convertible grills had complex mechanisms that were difficult for unsophisticated consumers to operate.  For example, in one prior art convertible grill, the valve mechanism for switching the minimum flow of fuel included a sleeve that had to be rotated precisely by hand to particular positions using tools, such as a screwdriver, and did not include any way of assisting the operator in aligning the different valve orifices required for the different fuels

4

when changing the valve's fuel settings.  *See, e.g.*, Ex. 1 ['384 pat.] at col. 2:4-18; Ex. 2 ['390 pat.] at col. 2:1-15.[2]

Copreci's invention overcame these shortcomings by providing a convertible grill that includes a valve system that allows a user to switch between liquefied petroleum and natural gas with relative ease.  The parties agree on the crux of Copreci's invention recited in the claims of the '384 and '390 patents, which Brinkmann describes as follows:

> The claimed invention resides in selectively limiting rotation of the rotary actuating shaft of the regulating organ when using NG so that it cannot rotate past the $Q_{min}$ opening for NG, and removing that rotation limitation when using LPG so that the rotating appendix can rotate past the NG $Q_{min}$ opening to the LPG $Q_{min}$ opening.

Dkt. No. 59 at 6.  Copreci's invention thus assists the operator in aligning the correct valve opening (particularly the opening for the minimum flow rate) for each fuel.  Importantly, with Copreci's invention, "it is not necessary to use tools for adjusting the flow [for different fuels], nor to learn how to adjust the [valve] as is required in the prior art valve."  Ex. 1 at col. 2:53-56.

---

[2] Citations to "Ex. __ at __" refer to the exhibits attached to the Declaration of Jennifer K. Robinson in Support of Copreci's Opening Claim Construction Brief (Dkt. No. 44-1).

**B.     The Specification**

The '384 and '390 patents share essentially the same specification.[3]  As explained in the common specification, Copreci's invention includes a "gas tap for a domestic cooking appliance of the type with a frusto-conical regulating organ coupled to an actuating shaft and to a rotary control knob, which is capable of supplying different required flows of" the cooking fuel, depending on whether the fuel is liquefied petroleum or natural gas.  *Id.* at col. 2:22-27.  Specifically, "[t]he gas valve according to the invention is capable of providing two angular positions of the regulating organ, both spaced apart from each other to supply a different minimum flow Qmin according to the type of gas, NG [natural gas] or standard LPG [e.g., propane], used as the fuel for the appliance."  *Id*. at col. 2:34-38.  To provide this convertible-fuel feature, "the regulating organ has two successive Qmin [minimum flow rate] outlet holes spaced apart in the angular direction," and the invention includes structural stops to help position the valve at the desired angular position.  *Id.* at col. 2:38-42.

While the claimed invention covers many different configurations, the specification teaches several exemplary embodiments.  For example, in Figs. 1-4, the specification teaches a valve (3) that has a valve body (3a) and a regulating

---

[3] Copreci cites to the '384 patent herein.

organ (6).  *Id.* at col. 3:16-20.  As shown in Fig. 3 below, the regulating organ (6)

may rotate between an off position, a maximum flow position (Qmax), an

intermediate flow position (17), and two minimum flow positions (Qmin) designed

respectively for each of the two fuel types.  *Id.* at col. 3:36-54.



FIG. 1        FIG. 3        FIG. 4

To configure the grill for natural gas, this embodiment includes a control

knob (9) that has a protuberance or appendix (14) (yellow highlighting) that

cooperates with a groove (20) (purple highlighting) in the external control

panel (2) of the grill.  *Id.* at col. 3:55-col. 4:27.  Specifically, the groove (20) and

appendix (14) are stops that cooperate to limit movement of the valve at the Qmin

orifice for natural gas, so that it does not rotate to the Qmin orifice for liquefied

petroleum gas.  To configure the grill for liquefied petroleum gas, the knob (9) can

be replaced with a knob that does not include the protuberance or appendix (14) to

allow movement of the valve all the way to the Qmin orifice for liquefied

7

petroleum gas.  The valve also may include a recess (12a) that limits movement past the Qmin orifice for liquefied petroleum gas.  *Id.* at col. 4:48-55.

In another embodiment shown in in Figs. 5 and 6 below, instead of the groove (20), the grill may include a stop (24) (purple highlighting) on a bezel disk (22) of the control panel (2') that cooperates with the protuberance or appendix (14) (yellow highlighting) of the control knob (9).  Similar to the groove (20), the stop (24) engages with the protuberance or appendix (14) of the control knob (9) to limit movement of the valve body (3a) between the desired positions.  To configure the grill for liquefied petroleum gas, the bezel disk (22) could be replaced with one that does not include the stop (24), so that the valve body (3a) may move all the way to the Qmin orifice for liquefied petroleum gas. *Id.* at col. 5:39-43.



While the specification provides a description of these two exemplary embodiments, it states that other designs are possible within the scope of the invention. *Id.* at col. 5:43-44 ("Other embodiments of the invention in addition to those [embodiments] 1A and 1B described above are also possible."). As acknowledged by Brinkmann, the key concept is the use of stops that limit movement of the valve to align the respective openings of the valve, thereby generating the required flow rates and pressures for the two different fuels.

### C.   The Claims

Claim 1 of the '384 patent is representative and recites:

> A gas cooking appliance adapted for a supply of either a natural gas or a liquefied petroleum gas comprising:
>
> a burner; and
>
> a valve with a valve body having a rotatable regulating organ between a valve inlet and a valve outlet, the regulating organ configured to vary the flow rate of gaseous fuel at the valve outlet as a function of an angular position of the regulating organ, a first angular position of the regulating organ determining a first minimum flow rate of the natural gas, and a second angular position of the regulating organ, successive to the first angular position, determining a second minimum flow rate of the second liquefied petroleum gas, the valve further comprising a control knob used to manipulate the angular position of the regulating organ coupled to the regulating organ by an actuating shaft, the valve having a **first part** that rotates simultaneously with a rotation of

9

the control knob and that is co-operable with a second part, apart from the valve, situated on the appliance to prevent rotation of the regulating organ beyond the first angular position, absent the presence of the **first part** or the second part the regulating organ is rotatable to the second angular position.

*Id.* at col. 6:16-38 (emphasis added).  The only disputed term in the asserted claims of the '384 patent, "first part," is shown in bold underlining.

Claim 1 of the '390 patent is representative and recites:

A gas cooking appliance comprising:

a burner;

a valve comprising:

a valve inlet,

a valve outlet,

a rotatable regulator between the valve inlet and the valve outlet,

wherein the valve is configured to provide a minimum flow rate of natural gas when the regulator is in a first angular position,

a shaft coupled to the regulator to manipulate the angular position of the regulator to control the flow rate of gas at the valve outlet,

a stop, apart from the valve, wherein the shaft rotates relative to the stop, and wherein the stop is positioned and configured to cooperate with a **rotatable structure** to prevent rotation of the regulator beyond the first angular position; and

10

> wherein the valve is configured to provide a minimum
> flow rate of liquefied petroleum gas when the regulator is
> in a second angular position, and the regulator is
> rotatable to the second angular position only in the
> absence of the **rotatable structure**.

Ex. 2 at col. 5:65-6:20 (emphasis added).  The sole disputed term in the asserted claims of the '390 patent is "rotatable structure."

### D.    The Prosecution History

During prosecution, the PTO did not limit the terms "first part" or "rotatable structure" to the embodiments in the specification.  Rather, the PTO interpreted these terms to cover all structural components that operated in essentially the same manner as the exemplary structures described in the specification, i.e., as a stop. For example, in the notice of allowance for the '384 patent, the PTO explained that the term "first part" encompasses a "feature (part) that rotates concurrently with the rotation of the control knob, the feature interacting with a feature located on the appliance to prevent rotation of the valve beyond the first minimum flow rate position."  Ex. 3 [Notice of Allowance for '384 pat.] at 3.

And similarly, during prosecution of the '390 patent, the PTO asserted that the term "rotatable structure" was broad enough to cover a structure that was totally different from exemplary "rotatable structure" described in the patents-in-suit, namely the protuberance or appendix (14) on the control knob.  Specifically,

the PTO asserted that a prior art patent disclosed a stop sleeve (29) that was a

"rotatable structure," even though it was not part of a control knob.  Ex. 4 [3/29/12

Office Action for '390 pat.] at 5, line 16-17; Ex. 5 [Brumbaugh '612 pat.] at

col. 10:27-41, Figs. 1, 3, 4.

### E.    Brinkmann's Accused Products

An example of one of Brinkmann's accused products is set forth below.



Brinkmann's accused products include a rotatable "stop plate" (shown in

red) that cooperates with a "stop pin" (shown in green) to limit rotation of its dual-

gas valve to the minimum flow rate opening for natural gas.  When the rotatable

stop plate or the stop pin are not present, the valve will rotate all the way to the

minimum flow rate opening for liquefied petroleum gas.  Accordingly, by

optionally including the stop plate and stop pin, Brinkmann's grills can be

converted between using liquefied petroleum and natural gas.

## III.   ARGUMENT

### A.   Claim Construction Principles

In this case, there are only two claim terms still in dispute.  Accordingly, the Court only needs to address these two disputed terms.  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding claim construction "is not an obligatory exercise in redundancy.").

As explained by the Federal Circuit, claim construction by definition focuses on the language of the claims, which define the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Importantly, "the words of a claim 'are generally given their ordinary and customary meaning.'"  *Id.*  In cases such as this one, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  A district court does not shirk its responsibility to construe disputed terms by assigning them their plain meaning, so long as the court resolves the claim construction dispute between the parties, for example by rejecting Brinkmann's unduly narrow proposed construction.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (rejecting argument that "district court shirked its responsibility to

construe a disputed claim term by adopting 'plain and ordinary meaning'"). Moreover, where the plain meaning applies, "general purpose dictionaries may be helpful." *Phillips*, 415 F.3d at 1312.

The courts apply a "stringent standard for narrowing a claim term beyond its plain and ordinary meaning." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). Courts may only "interpret a claim term more narrowly than its ordinary meaning under two circumstances: '1) when a patentee sets out a definition and acts as [his] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *Id.* (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). To be his own lexicographer, "a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Aventis*, 675 F.3d at 1330 (quoting *Thorner*, 669 F.3d at 1366). "The standard for disavowal of claim scope is similarly exacting" and requires "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Thorner*, 669 F.3d at 1366 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1315, 1325 (Fed. Cir. 2002)).

As explained by the Federal Circuit, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only

embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as limited to that embodiment.").

### B. The Special Master Correctly Construed "First Part" and "Rotatable Structure" as Having Their Plain and Ordinary Meanings in the Context of the Claims in Which They Appear

The meanings of "first part" and "rotatable structure" are plain, and the Court should simply assign them their ordinary meanings. *See Finjan*, 626 F.3d at 1207. Specifically, a "part" is "a constituent member of a machine or other apparatus," and a "rotatable structure" is a structure that can rotate. *See* Ex. 6 [Excerpt from Merriam-Webster's Collegiate Dictionary (11th ed. 2008)] at 903; Ex. 7 [Excerpt from Webster's Third New International Dictionary (1993)] at 1976. While the Special Master correctly held that no construction of these terms was necessary, if the Court prefers to include an explicit definition for the jury, the term "first part" should be construed as "a constituent member of an apparatus," and "rotatable structure" as "a structure that can rotate."

Despite their straightforward meanings, Brinkmann asserts that the Special Master erred by defining "first part" and "rotatable structure" to have their ordinary meaning in the context of the claims in which they appear.  Dkt. No. 58 at 13, 15; Dkt. No. 59 at 11-22.  Brinkmann instead argues that the Special Master should have limited the claims to the preferred embodiments described in the specification by construing them as means-plus-function limitations governed by 35 U.S.C. § 112, ¶ 6, even though none of the claims at issue includes the statutory "means" language that is the hallmark of a § 112, ¶ 6, claim.  Dkt. No. 59 at 11-22.

Under § 112, ¶ 6, when a patentee obtains a claim that recites a "means" for performing a function, the patentee invokes a rebuttable presumption that the limitation should be construed to cover the corresponding structure in the specification that performs that function and equivalents thereto.  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).  On the other hand, where a claim limitation does not include the word "means," **there is a strong presumption that § 112, ¶ 6, does not apply**.  *Id.* ("[T]he presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome.").  Importantly, "[m]eans-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."  *Phillips*, 415 F.3d at 1311.

16

Here, there is no basis to apply § 112, ¶ 6, to the terms "first part" and "rotatable structure," much less enough basis to overcome the "strong presumption" against it. These are quintessential structural limitations that do not use the statutory "means" language. As Copreci explained at the oral argument, the term "part" appears in the claims of over 600,000 patents and the term "structure" appears in the claims of over 450,000 patents (Dkt. No. 56 at 26-27), yet Brinkmann has failed to cite *any* case in which a court interpreted either of those terms as a means-plus-function limitation. Indeed, the Federal Circuit has held to the contrary, "conclud[ing] that the claim term 'dust collection **structure**' is not subject to construction as a means-plus-function element under 35 U.S.C. § 112, ¶ 6," because "the claim language at issue recites sufficiently definite structure." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1230 (Fed. Cir. 2011) (emphasis added). Significantly, the Special Master held that the claim terms at issue here are "certainly more structural than that of *Powell v. Home Depot ...*, which held that the presumption against the application of § 112, ¶ 6 was not overcome." Dkt. No. 58 at 12. *See also Lighting World*, 382 F.3d at 1359-60 ("connector assembly" not means-plus-function limitation); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002) ("reciprocating member" not means-plus-function limitation); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308,

1318-19 (Fed. Cir. 1999) ("eyeglass hanger member" not means-plus-function limitation); *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1358-59 (Fed. Cir. 2011) ("modernizing device" not means-plus-function limitation); *Stryker Corp. v. Zimmer, Inc.*, 2012 Markman 333814, 2012 WL 333814, at *6-9 (W.D. Mich. 2012) ("lock assembly" not means-plus-function limitation); *Hubbell, Inc. v. Pass & Seymour, Inc.*, 2011 WL 1045659, at *14 (D. Conn. 2011) ("latching mechanism" not means-plus-function limitation).

As explained by the Special Master, moreover, "structure may be provided by other claim language associated with" a claim term.  Dkt. No. 58 at 10 (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319 (Fed. Cir. 2004)). Here, the claims recite substantial structural features associated with the "first part" and "rotatable structure" limitations, precluding application of § 112, ¶ 6.  For example, claim 1 of the '384 patent recites that the "first part" is a portion of the "valve," and that the "first part … rotates simultaneously with a rotation of the control knob."  Claim 1 of the '384 patent also recites that the first part is "co-operable with a second part" to "prevent rotation of the regulating organ beyond the first angular position."  As the Special Master held, these features "express[] the physical relationship" of the "first part" and "second part."  Dkt. No. 58 at 10.

The same analysis applies to the "rotatable structure."  For example, not only does claim 1 of the '390 patent specify that the structure is "rotatable," it also requires that a "stop is positioned and configured to cooperate with a rotatable structure to prevent rotation of the regulator beyond the first angular position," and that "the regulator is rotatable to the second angular position only in the absence of the rotatable structure."  *See also* claim 11 ("a rotatable structure configured to rotate with the shaft [and] configured to be removable from the appliance"); claim 14 ("a rotatable structure detachable from the shaft and configured to rotate with the shaft").  Given all of the claimed structure associated with the claim limitations at issue, Brinkmann's proposal to apply § 112, ¶ 6, to limit the claims to an exemplary embodiment in the specification should be rejected.  As the Special Master correctly held, "[t]he burden rests on Brinkmann to overcome the presumption that these are not elements to be construed under § 112, ¶ 6," and Brinkmann has failed to do so.  Dkt. No. 58 at 13.

Moreover, during prosecution of the '390 patent, the PTO interpreted the term "rotatable structure" to read on a stop disclosed in the prior art that could not possibly be considered "a protuberance or appendix that is part of and projects from the control knob," which is Brinkmann's proposed construction of "rotatable structure."  Dkt. No. 59 at 22; *see supra* at 11.  Brinkmann's proposed narrow

19

construction thus also is at odds with the prosecution history.  *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358-59 (Fed. Cir. 2012) (rejecting a party's proposed narrow construction where, "during prosecution, the examiner rejected claims as anticipated or obvious over prior art mower decks that would be excluded from [the party's] proposed construction.").

Additionally, the doctrine of claim differentiation militates against Brinkmann's proposed construction.  Specifically, Brinkmann's proposal to limit "first part" to be "a protuberance or appendix that is part of and projects from the control knob" (Dkt. No. 59 at 20) would render dependent claim 4 of the '384 patent superfluous since it recites that feature and nothing else:  "A gas cooking appliance according to claim 1, wherein **the first part is a part of the control knob**" (emphasis added).  And similarly, claim 6 of the '390 patent recites:  "The gas cooking appliance of claim 2, wherein the appliance further comprises a control knob coupled to the actuating shaft, **the rotatable structure being a part of the control knob**" (emphasis added).  This is yet additional compelling evidence that Brinkmann's proposed construction cannot be correct.  *See Phillips*, 415 F.3d at 1315 ( "[T]the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."); *see also Wenger Mfg., Inc. v. Coating Machinery Sys.,*

*Inc.*, 239 F.3d 1225, 1234 (Fed. Cir. 2001) ("We agree with Wenger that the examination of other claims in a patent may provide guidance and context for interpreting a disputed means-plus-function limitation … .").

Brinkmann's position boils down to an incorrect argument that "first part" and "rotatable structure" should be construed as means-plus-function limitations because the claims do not specify any particular structure or shape for them. *See, e.g.*, Dkt. No. 59 at 13 (arguing § 112, ¶ 6, applies because "the term 'part' does not connote any particular structure"). But the Federal Circuit has repeatedly rejected that argument, explaining that there is no requirement that a claim term recite a "specific structure" in order to avoid § 112, ¶ 6. *Lighting World*, 382 F.3d at 1360 ("[I]n considering whether a claim term recites sufficient structure to avoid application of section 112 ¶ 6, **we have not required the claim term to denote a specific structure.**") (emphasis added); *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002) ("[A] term need not connote a precise physical structure in order to avoid the ambit of" § 112, ¶ 6.).

In *Lighting World*, the Federal Circuit reversed the district court's decision to construe "connector assembly" as a means-plus-function limitation, even though that term "does not bring to mind a particular structure … ." *Id.* There, the Court explained, "[t]he fact that more than one structure may be described by that term,

21

or even that the term may encompass a multitude of structures, does not make the term 'connector assembly' any less a name for structure." *Id.* at 1361.  The Court held that, "[w]hile the terms 'connector' and 'connector assembly' are certainly broad, and may in the end include any structure that performs the role of connecting, the same could be said of numerous other terms, such as 'clamp,' or 'clip,' or even 'support member,'" each of which are "routinely treated as structural by patent practitioners and courts … ." *Id.*  And similarly, in *Powell*, the Federal Circuit held that the term "dust collection structure" was not a means-plus-function limitation, notwithstanding the claim's failure to specify any specific shape or structure for that limitation.  663 F.3d at 1230.

While Brinkmann spends a significant amount of time attempting to distinguish the litany of cases holding that § 112, ¶ 6, does not apply to claim terms that do not recite the statutory "means" language, Brinkmann fails to identify *any* case applying § 112, ¶ 6, on facts remotely similar to this case.  For example, Brinkmann relies heavily on *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998), arguing that the court there construed "lever moving element" under § 112, ¶ 6, even though the claims did not recite the term "means."  Dkt. No. 59 at 16.  But Brinkmann fails to mention that the decision in *Mas-Hamilton* turned on unusual facts not present here.  Specifically, during prosecution of the

patent at issue in *Mas-Hamilton*, "the patentee had used the terms 'member,' 'element,' and 'means interchangeably,' and that in the patent itself, the patentee described the 'lever moving element' as a 'means … for moving the lever.'" *Lighting World*, 382 F.3d at 1362-63 (distinguishing *Mas-Hamilton* based on these unusual facts).  Accordingly, unlike Copreci, the patentee in *Mas-Hamilton* intentionally invoked § 112, ¶ 6, by <u>expressly</u> equating the term "member" with the statutory term "means."  Brinkmann also relies on *MA. Inst. Of Tech. v. Abacus Soft.*, 462 F.3d 1344 (Fed. Cir. 2006), which similarly construed "colorant selection mechanism" under § 112, ¶ 6, where the patentee again had <u>expressly</u> used the term "means" and "mechanism" synonymously in the specification.  *Id.* at 1354.  There are no similar facts here.  Brinkmann's inability to identify a single case that applied § 112, ¶ 6, under facts similar to this case belies its position.

Finally, Brinkmann attempts to justify its incorrect claim construction position by arguing that Copreci "*only* invented interchangeable knobs or bezels" because all of the preferred embodiments in the specification include them.  Dkt. No. 59 at 18-22.  But Brinkmann again runs afoul of the well-settled principles of patent law articulated by the Federal Circuit.  As explained above, "it is improper to read limitations from a preferred embodiment described in the specification— even if it is the only embodiment—into the claims absent a clear indication in the

23

intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim*, 358 F.3d at 913; *see also Phillips* 415 F.3d at 1323.

Brinkmann fails to point to anything suggesting that Copreci intended its claims to be limited to the preferred embodiments.  Indeed, to the contrary, Brinkmann acknowledges that Copreci specifically drafted its claims to cover Brinkmann's accused product (Dkt. No. 59 at 7-8), which Copreci had every right to do.  *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.").

## IV.   CONCLUSION

For the reasons explained above, Copreci respectfully requests that the Court deny Brinkmann's objections to the Special Master's recommendations on claim construction and adopt the Special Master's proposed claim constructions.

24

Respectfully submitted,

Dated:  September 27, 2013

By:  /s/Virginia L. Carron
Virginia L. Carron
Georgia Bar No. 112,770
FINNEGAN, HENDERSON, FARABOW,
  GARRETT, & DUNNER, L.L.P.
303 Peachtree Street, N.E.,
3500 SunTrust Plaza
Atlanta, GA  30308
Telephone:  (404) 653-6400
Facsimile:  (404) 653-6444
virginia.carron@finnegan.com

Michael A. Morin (*pro hac vice*)
michael.morin@finnegan.com
Andrew J. Vance (*pro hac vice*)
andrew.vance@finnegan.com
Jennifer K. Robinson (*pro hac vice*)
jennifer.robinson@finnegan.com
901 New York Ave, N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Counsel for Plaintiffs*

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

COPRECITEC, S.L., COPRECI, S.
COOP., and MONDRAGON
COMPONENTS U.S.A. CO.,

      Plaintiffs,

        v.

THE BRINKMANN CORPORATION,

      Defendant.

Civil Action No.
1:12-CV-1480-AT

## CERTIFICATE OF SERVICE, FONT, AND MARGINS

Counsel for Plaintiffs Coprecitec, S.L., Copreci, S. Coop., and Moondragon Components U.S.A. CO., hereby certifies that on September 27, 2013, the foregoing COPRECI'S RESPONSE TO BRINKMANN'S OBJECTIONS TO SPECIAL MASTER'S REPORT ON CLAIM CONSTRUCTION was electronically filed with the Clerk of the Court using the CM/ECF System, which will automatically send email notification of such filing to all counsel of record.

Counsel for Plaintiffs further certifies that this document was prepared in 14 point Times New Roman font and complies with the margin and format requirements of this Court.

Dated:  September 27, 2013     By:  /s/Virginia L. Carron
                               Virginia L. Carron
                               Georgia Bar No. 112,770
                               FINNEGAN, HENDERSON, FARABOW,
                                 GARRETT, & DUNNER, L.L.P.
                               303 Peachtree Street, N.E.,
                               3500 SunTrust Plaza
                               Atlanta, GA  30308
                               Telephone:  (404) 653-6400
                               Facsimile:  (404) 653-6444
                               virginia.carron@finnegan.com

                               Michael A. Morin (*pro hac vice*)
                               michael.morin@finnegan.com
                               Andrew J. Vance (*pro hac vice*)
                               andrew.vance@finnegan.com
                               Jennifer K. Robinson (*pro hac vice*)
                               jennifer.robinson@finnegan.com
                               901 New York Ave, N.W.
                               Washington, DC  20001
                               Telephone:  (202) 408-4000
                               Facsimile:  (202) 408-4400

                               *Counsel for Plaintiffs*